J. B. CAMORS ET AL., Respondents, *v*. A. J. GOMILA, Appellant.

June 8, 1880.

1. Where the purchaser denies that goods delivered to him are of the contract grade, and claims that he accepted them upon condition that they would sell in market for that grade, that they were mixed with the purchaser's goods is not conclusive of an acceptance under the original contract.

2. The certificate of an inspector of wheat is not conclusive as to the quality of the wheat, but is a fact for the jury.

3. If the petition states a cause of action, its defects of statement are cured by verdict.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed*.

ROBERT CRAWFORD, for the appellant: The demurrers to petition, and motion to make it more definite, upon being overruled, were excepted to and made part of the record, and hence are not waived by defendants answering over. — *Highley* v. *Noell*, 51 Mo. 145; *Saulsbury* v. *Alexander*, 50 Mo. 142. Nor need it be mentioned in a motion for a new trial. — *O'Connor* v. *Koch*, 56 Mo. 263. Plaintiff's petition did not state a cause of action. — Pom. on Code Pl., sects. 517, 524, and note on p. 553; Bliss on Code Pl., sect. 268; *Moore* v. *Waddle*, 34 Cal. 147.

MARSHALL & BARCLAY, for the appellant: After an acceptance, though of an inferior quality, an action for a breach of contract in failing to deliver cannot be maintained, no return or offer to return the property having been made. — *Dutchess* v. *Harding*, 49 N. Y. 324; *Graff* v. *Foster*, 67 Mo. 520;

*McCormick* v. *Sisson*, 45 N. Y. 265. After acceptance of the article, though of inferior grade, a suit cannot be maintained except for warranty or false representations. — *Dounce* v. *Dow*, 64 N. Y. 411; *Sprague* v. *Blake*, 20 Wend. 64; *Reed* v. *Randall*, 29 N. Y. 358. "Receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or *if any act be done by the buyer which he would have no right to do unless he were owner of the goods.*"—Benj. on Sales (2d Am. ed.), sect. 703, citing *Bogue* v. *Newcomb*, 1 N. Y. S. C. (T. & C.) 252; *Neaffie* v. *Hart*, 4 Lans. 4; *Hunt* v. *Silk*, 5· East, 449; *Beach* v. *Schmultz*, 20 Ill. 185. Plaintiffs had no right or authority to mix the eight thousand bushels of wheat from the barge Baker with the inferior No. 2 wheat in the Du Chatel, except as absolute owners. By doing so, they placed it out of their power to return the wheat to defendant. Knowing, as they did, that the Baker wheat was tendered as No. 1, and that the wheat in the Du Chatel was No. 2, they made such a mixture at their peril. Whoever acts thus must bear the loss. —*Grymes* v. *Sanders*, 3 Otto, 55; *Pease* v. *Copp*, 67 Barb. 132; *Robinson* v. *Holt*, 39 N. H. 557; *The Idaho*, 3 Otto, 575; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62; Benj. on Sales, sect. 703.

A. R. Taylor, for the respondents.

Hayden, J., delivered the opinion of the court.

This is an action to recover damages for a breach of contract by which the defendant agreed to deliver to the plaintiffs at New Orleans twenty thousand bushels of No. 1 red winter wheat. The evidence of the plaintiffs tended to show that there had been a written contract for the delivery of wheat, which the defendant had performed; that the defendant, needing fifteen thousand bushels of No. 1 red winter wheat to load a vessel, borrowed that quantity of wheat of that kind of the plaintiffs; and that, at the same time, the plaintiffs bought five thousand bushels of wheat of the same

quality of the defendant, so that the defendant contracted with the plaintiffs to deliver to the latter, at New Orleans, twenty thousand bushels of No. 1 red winter wheat. A large load of wheat, which had arrived from St. Louis on the barge Baker, was turned over to the plaintiffs by the defendant, and was taken alongside of the bark of the plaintiffs, which was loading at New Orleans for France. When a portion of this wheat had been unloaded and placed in the bark, the plaintiffs discovered that it was not No. 1 red winter wheat, but of an inferior quality. The plaintiffs notified the defendant of the fact, and gave orders that no more of the wheat should be put on the bark. The testimony of the plaintiffs tended to show that the defendant acknowledged that the wheat was inferior to that called for by the contract, and that it was agreed that the portion already loaded should go to France, there to be sold, if complaint was made, for whom it might concern, and that on the barge sold to the best advantage. On the defendant's part it was contended that what the plaintiffs did amounted to an acceptance; that, as the inspector at St. Louis had certified the wheat to be No. 1 red winter wheat, the parties were bound, under the custom, by his certificate; and also that the wheat was of the quality contracted for. There was a verdict for the plaintiffs for $2,000.

The following instructions were given by the court: —

1. " The court instructs the jury that if they believe from the evidence that the plaintiffs are partners as alleged, and that the defendants, A. J. Gomila and William Gordon, are copartners as alleged, and that the firm of Gordon & Gomila agreed with plaintiffs to deliver to them at New Orleans twenty thousand bushels of wheat known in the market as ' No. 1 red winter wheat,' and received payment therefor from the plaintiffs, either in money or other wheat, and that said defendants failed to deliver said twenty thousand bushels of said ' No. 1 red winter wheat ' as agreed, but instead thereof tendered to plaintiffs wheat of a different

and inferior description, grade, and value ; and if the jury find that the plaintiffs, immediately on the discovery of the inferior quality of the wheat so tendered, notified defendants thereof, and by consent of defendants eight thousand bushels of the wheat so tendered was sent forward by plaintiffs to France, to be sold for account of whom it might concern, and the remaining twelve thousand bushels, by like consent, was sold by plaintiffs and defendants at New Orleans, then the court declares that plaintiffs are entitled to recover in this action, and the measure of damages will be the difference in the market value at New Orleans, at the time of the delivery of said inferior grade of wheat, between 'No. 1 red winter wheat,' which should have been delivered, and the wheat which defendants in fact delivered.''

2. '' If the jury believe from the evidence that plaintiffs, after they had an opportunity to examine the wheat tendered them by the defendants, accepted eight thousand bushels thereof, and shipped the same to France and sold it on their own account, and did not offer to return said eight thousand bushels to the defendants, then such acceptance of said eight thousand bushels, and shipment and sale thereof, without offer to return the same, is a defence to this action, and the plaintiffs cannot recover. But if plaintiffs did make objection to the quality of said eight thousand bushels of wheat, on examintion of the same, and if the shipment and sale of the same was made with defendants' consent, after they were notified of its inferior quality, then such shipment will not prevent a recovery in this action, if the wheat in controversy was in fact inferior in grade and quality to No. 1 red winter wheat.''

3 '' The court instructs the jury that the fact that the wheat in the barge A. J. Baker was certified by the inspector at St Louis as ' No. 1 red winter wheat' is not conclusive that the wheat was in fact of such grade, but it is for the jury to determine, from all the facts and cir-

cumstances in the case, what was the true grade of the wheat.''

4. '' The burden of proof in this case is upon plaintiffs, by which is meant that the plaintiffs must prove, in the first instance, to the satisfaction of the jury, the facts necessary to their recovery in this suit, as stated in instruction No. 1, hereinbefore given.''

On the part of the defendant the court told the jury that if the cargo of wheat in the barge Baker, at the time of its arrival in New Orleans, was in fact No. 1 red winter wheat, according to the classification and grade of wheat prevailing at St. Louis, then the jury should find for the defendant.

These instructions present the correct issues and fairly cover the case. It is complained, however, that the court refused instructions offered by the defendant. The third instruction was as to the effect of intermixture by the plaintiffs with inferior grain already supposed to be in the plaintiffs' bark. But all which is correct in this is covered by the second instruction of the court. The question was whether the plaintiffs accepted the grain, not what they did with it after they accepted it. The defendant had no right to embody an argument in an instruction, and the latter part of the third instruction avails only as an argument. This instruction, moreover, and the defendant's theory generally, ignores the testimony tending to show that the grain was admitted by the defendant to be, to use his own expression, '' very palpably inferior '' in quality to the grain he agreed to deliver, and that upon this basis the defendant consented that the grain should be sold for whom it might concern. The same observations apply to the defendant's instructions numbered 2 and 6. Instruction 7 was properly refused. It gives undue weight to the certificate, which, as the court correctly declared in its own instruction, had no conclusive force, but was a fact to be considered with other facts in the case. Under the court's instruction the certificate is not excluded, since '' all the

facts and circumstances'' are to be considered. In view of the nature of this evidence, being a written certificate of an inspector, this instruction was called for; but there was no propriety in singling out samples of grain, as in the defendant's instruction No. 5, and this instruction was properly refused.

The objection to the petition, though made by motion and demurrer, was not insisted on by motion in arrest of judgment. The petition states a cause of action, and is clearly good after verdict. Indeed, the principal objection interpolates an allegation into the petition which is not there. The objection is, that where an action is brought for breach of contract to deliver goods of a certain quality, the plaintiff cannot retain the goods actually delivered, but must return the latter goods, or offer to do so. But this petition does not aver acceptance or retention. It avers failure to deliver, and then, quite unnecessarily, goes on to state the manner of the failure. It is obvious that the seller, by delivering goods of inferior quality, may break his contract, and that the place and manner of delivery may be such as to involve no receipt or acceptance, and consequently no necessity of any offer to return. The objection ignores the evidence on which the verdict rests, and the peculiar facts of this case. The case was fairly tried, and no error appears in the rulings.

The judgment is affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.